## SETTLEMENT AND RELEASE AGREEMENT

This Settlement and Release Agreement ("Agreement") is entered into by and between Plaintiff Joseph Taylor (hereinafter, "Taylor") and Defendant JRK Residential Group, Inc. ("JRK") (collectively referred to herein as the "Parties" or individually as a "Party") as of this **20th** day of October, 2017 ("Effective Date"), as follows:

## RECITALS

**WHEREAS**, Taylor filed that certain civil action (the "Civil Action") in the United States District Court for the Northern District of Georgia bearing civil action number 1:17-cv-2637 (ELR) ("Complaint"), in which he asserted claims under the Fair Labor Standards Act ("FLSA"), and sought allegedly unpaid wages, liquidated damages, interest and attorneys' fees;

**WHEREAS**, the Parties filed a stipulation in the Civil Action pursuant to which they agreed to resolve their disputes via arbitration commenced the American Arbitration Association pursuant to the Parties' Arbitration Agreement. The Parties thereafter commenced AAA Case No. Case 01-17-0005-2066, in which Taylor raised claims against JRK identical to those in the Complaint (the "Arbitration");

**WHEREAS**, JRK denies the allegations asserted by Taylor as set forth in the Complaint and in the Arbitration. JRK asserts that Taylor was properly compensated and, therefore, that Taylor is not entitled to any overtime pay. JRK asserts that it acted in good faith and, therefore, that Taylor is not entitled to liquidated damages. JRK further asserts that it complied with the FLSA during all relevant times. Nonetheless, without admitting or conceding liability, wrongdoing or damages, JRK has agreed to settle the Arbitration on the terms and conditions set forth in this Agreement, to avoid the burden and expense of continued litigation;

**WHEREAS**, by this Agreement, the Parties desire to settle, fully and finally, all claims that were or could have been raised in the Complaint or in the Arbitration, and

**WHEREAS**, the Parties have also separately negotiated and reached an agreement on a general release of claims and limited confidentiality specifically related thereto.

**NOW, THEREFORE**, in consideration of the foregoing recitals and the mutual terms, covenants, and conditions hereinafter set forth, and subject to Court approval of the settlement, the Parties agree as follows:

**1.**    **Settlement Amount**. As consideration for Taylor's release of his FLSA Claims and for the general releases set forth herein, JRK will pay Taylor and his attorneys the gross sum of $8,800 (the "FLSA Settlement Amount"). The FLSA Settlement Amount is being paid in settlement for Taylor's FLSA Claims and Taylor's attorney's fees and costs.

The Parties agree that the FLSA Settlement Amount will be paid as follows:

a.    JRK will pay Taylor the gross amount of $4,200 as full compensation for Taylor's claims, his general release and the limited confidentiality set forth in Sections 3, 7 and 10. Withholdings will be made from this payment, which will be processed

through ordinary payroll, and this amount will be reported on a Form W-2 issued to Taylor.

b. JRK will pay the Vaughn Law Firm, LLC the gross amount of $4,600 for attorney's fees and costs. No deductions or withholdings will be made from this payment, and this amount will be reported on a Form 1099 issued to the Vaughn Law Firm, LLC. The Vaughn Law Firm, LLC will immediately provide its Form W-9 to JRK and acknowledges that JRK cannot make this payment until the W-9 is provided.

The consideration set forth above is in full and complete settlement of Taylor's claims under the FLSA as alleged in the Complaint and in the Arbitration. Section 1(a) FLSA Settlement Amount shall be paid directly to Taylor. Section 1(b) of FLSA Settlement Amount shall be due and payable to the Vaughn Law Firm, LLC. Taylor and his counsel agree not to seek any additional attorneys' fees, costs or expenses from JRK in connection with the matters alleged in the Complaint or Arbitration, or which could have been alleged in a complaint.

**2.     Release of Claims under the FLSA by Taylor.**  In consideration of the FLSA Settlement Amount described in Section 1 of this Agreement, Taylor releases and discharges JRK from any liability for any claims and damages allegedly arising under the FLSA, including the overtime claim and the liquidated damages claim.

**3.     Settlement Amount for General Release and Limited Confidentiality.**  As consideration for Taylor's general release of claims against JRK in Section 7 of this Agreement and for the limited Confidentiality of this Agreement in Section 9, JRK agrees to pay Taylor in the gross sum of $500 as consideration thereof (the "General Release Settlement Amount"). Withholdings will be made from this payment, which will be processed through ordinary payroll, and this amount will be reported on a Form W-2 issued to Taylor.

The consideration set forth above is in full and complete settlement of Taylor's general release of claims against JRK, and the non-disparagement and confidentiality terms.

**4.     Payment Schedule.**  The FLSA Settlement Amount will be paid upon the later of five (5) business days of the Court's approval of the Joint Motion for the Approval of the Settlement Agreement, or five (5) business days after the date on which Taylor dismisses the Arbitration with prejudice; provided however, that Vaughn Law Firm, LLC has submitted its W-9 form to JRK at least four (4) business days prior thereto.

**5.     Court Approval.**  The Parties shall execute and submit to the U.S. District Court for the Northern District of Georgia (the "Court") a joint motion for an Order approving this Agreement and entering a stipulation of judgment dismissing this case, with prejudice, as well as any other appropriate form(s) required by the Court to cause the dismissal of the Complaint with prejudice and closure of all matters referenced in the Complaint. The Joint Motion for Approval of Settlement and Stipulation of Judgment Dismissing Case, shall be filed within seven (7) days of the Effective Date of this Agreement. Following Court approval of the Joint Motion, Taylor shall dismiss the Arbitration with prejudice.

**6.     Tax Liability.**  In paying the amount specified in Section 1 and Section 3, JRK makes no representation regarding the tax consequences or liability arising from said payments.

Taylor understands and agrees that any and all tax liability that may be due or become due because of the payments referenced above is his sole responsibility, and that he will pay any such taxes that may be due or become due. Taylor agrees to bear all tax consequences, if any, attendant upon the payment to his of the FLSA Settlement Amount and the General Release Settlement Amount. Taylor further agrees to hold JRK harmless from and against all valid tax or tax withholding claims, amounts, interest, penalties, fines or assessments finally determined to be valid by any taxing authority or governmental agency with regard to the FLSA Settlement Amount and the General Release Settlement Amount. In the event JRK receives written notice that any claim or assessments for taxes, withholding obligations, penalties and/or interest arising out of this settlement are being or will be made against JRK, JRK shall promptly, after receipt of such written notice, notify Taylor by letter sent to counsel for Taylor.

       **7.**       **General Release by Taylor.**  In consideration of the General Release Settlement Amount described in Section 3 of this Agreement, Taylor (for himself, his agents, assigns, heirs, executors, and administrators) releases and discharges JRK, as well as its predecessors, successors, holding companies and affiliates, together with each of their respective past and present officers, directors, shareholders, members, managers, employees, agents, insurers, attorneys, accountants, and each of them (the "Releasees") from any and all charges, complaints, claims, liabilities, obligations, promises, agreements, controversies, damages, actions, causes of action, suits, rights, demands, costs, losses, debts, and expenses (including attorney fees and costs actually incurred), of any nature whatsoever, known or unknown, in law or equity which arose at any time from the beginning of time to the date Taylor executes this Agreement.  Without limiting the foregoing general release, Taylor understands that this general release applies, but is not limited, to: any and all legally waivable claims, complaints, causes of action, actions, rights, judgments, obligations, damages, demands, accountings, and/or liabilities of whatever kind or character, whether known or unknown, suspected or unsuspected, and whether or not concealed or hidden, occurring prior to the date of the execution of this Agreement, including but not limited to those which Employee may have or claim to have against all claims arising out of Taylor's employment relationship with JRK, the cessation of that employment, the compensation or benefits payable in connection with that employment or the cessation of that employment and/or any other interaction with Company, any statutory claims, any claims for breach of contract, breach of the covenant of good faith and fair dealing, the loss, mishandling or destruction related to any of Employee's personal property, inducement of breach of any right, wrongful or unlawful discharge, violation of public policy, harassment, sexual harassment and intentional or negligent infliction of emotional distress, breach of fiduciary duty, any claims for any stress or any related physical manifestations of such stress, intentional and negligent misrepresentation, conspiracy, negligence of any kind, libel, slander, unlawful efforts to prevent employment, the invasion of any right to privacy including without limitation the right to medical privacy, discrimination on the basis of race, color, sex, national origin, religion, age, sexual orientation, medical condition, disability, handicap, or marital status and further including, without limitation, (a) Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000(e), *et seq*.; (b) The Americans With Disabilities Act of 1990, as amended, 42 U.S.C. § 12101*et seq*.; (c) The Equal Pay Act, as amended, 29 U.S.C. § 206, *et seq*.; (d) The Lilly Ledbetter Fair Pay Act of 2009; (e) The Family and Medical Leave Act of 1993, as amended, 29 U.S.C. § 2601, *et seq*.; (f) The National Labor Relations Act, 29 U.S.C. § 151, *et seq*.; (g) The Employee Retirement Income Security Act, as amended, 29 U.S.C. § 1001 *et seq*.; (h) The Fair Credit Reporting Act, as amended, 15 U.S.C. § 1681 *et seq*.; (i) The Civil Rights Act of 1866, 42 U.S.C. § 1981 *et seq*.; (j) The Fair Labor Standards Act, as amended, 29 U.S.C. § 201, *et seq*. (the "FLSA"); (k) The Occupational Safety and Health Act, as amended, 29 U.S.C. § 651, *et seq*. (l)

The Age Discrimination in Employment Act, 29 U.S.C §621, *et seq.* ("ADEA")*,* (m) the Older Workers Benefit Protection Act of 1990, 29 U.S.C. 626(1), *et seq.* ("OWBPA"), (n) any agreement, representation, promise, understanding, policy, practice, plan, or potential entitlement (regardless of the source); (o) past or future wages, severance, compensation, vacation pay, holiday pay, meal or rest breaks, overtime, benefits, bonuses, commissions, fringe benefits, reimbursement of expenses, or other forms of consideration, payment, or remuneration, except for claims to enforce payment of those sums explicitly identified in Section 1 and/or Section 3; (p) breach of contract; (q) intentional and/or negligent infliction of emotional distress; and (r) any other federal, state, or local law, whether arising or emanating from statute, executive order, regulation, code, common law, or other source, including, but not limited to, all actions sounding in tort, contract, and/or any doctrine of good faith and fair dealing.

Taylor further waives any and all rights to participate in a class or collective action alleging violations of any of the above laws, including those brought under the FLSA, and Taylor further covenants and agrees not to accept, recover or receive any back pay, front pay, liquidated damages, other damages or any form of relief based upon any claims that have been asserted or could have been asserted or settled in a lawsuit that may arise out of, or in connection with, any other individual, class or administrative remedies pursued by any state or local governmental agency against JRK.

IT IS THE INTENT OF TAYLOR TO RELEASE ALL CLAIMS OF EVERY NATURE AND KIND WHETHER KNOWN OR UNKNOWN, ACCRUED OR NOT ACCRUED, WHICH TAYLOR HAD OR MAY HAVE AGAINST JRK OR ANY OF THE RELEASEES AS OF THE DATE OF THE EXECUTION OF THIS AGREEMENT.

This Agreement shall not apply to any provision of this Agreement that may be interpreted to waive, release, or extinguish any rights that, by express and unequivocal terms of law, may not under any circumstances be waived, released, or extinguished, including any other claim which cannot be released by private agreement.

**8.     Non-disparagement.** Taylor will not make or authorize any written or oral statement that is negative or disparaging about JRK and/or the Releasees and/or their affiliates, members, managers, officers, employees, investors or clients, and Taylor will not engage in any conduct or communications with the media, social media, or with any JRK's employees, investors or clients designed to create significant harm to the JRK. However, nothing contained herein shall be construed as requiring JRK to: (a) violate any requirements of the National Labor Relations Board or any other regulatory authority by preventing its employees from discussing their working conditions, workplace policies supervisors, or (b) attempt to obstruct the lawful off-duty conduct of members of its workforce, or (c) refuse to comply with demands of law enforcement, regulatory agencies or lawful subpoenas. All reference checks (both written and oral), will be answered by a JRK in a neutral manner, and any responses to reference checks will supply only information concerning dates of employment, job title and job duties. Taylor agrees to submit all requests for references exclusively to the Human Resources Department. JRK agrees that if asked for a reference by any prospective employer and/or current employer of Taylor, JRK will respond by only providing the dates Taylor was employed with JRK, last position held.

**9.    No Re-Employment.**  Taylor agrees that he will not knowingly seek or accept employment in the future with JRK or any of the Releasees, or any JRK subsidiaries, affiliates, or holding companies.

**10.    Limited Confidentiality.**  Except for the claims related to the FLSA, Taylor agrees and promises that unless required by law to do so, he will not disclose the terms of this Agreement or information about his involvement with JRK, or make any oral or written statements or reveal any information to any person, company, agency or other entity.  Taylor agrees that he will not discuss the terms of this Agreement with others and if asked will say only that "the matter has been resolved satisfactorily."  Notwithstanding the foregoing, nothing in this Section shall restrict Taylor from discussing the job duties and responsibilities of his employment with JRK with a potential employer or restrict any disclosure of the FLSA claims.

**11.    Representations, Warranties and Affirmations.**  Taylor represents, warrants and affirms that he has no suits, claims, charges, complaints or demands of any kind whatsoever currently pending against JRK with any local, state, or federal court or any governmental, administrative, investigative, civil rights or other agency or board.  Taylor represents, affirms and warrants that he has not filed any charge, complaint or action against JRK with OSHA, the DOL, the EEOC, the NLRB or any other Federal, State or local agency or board.  This representation, affirmation, and warranty is a material inducement for JRK to enter into this Agreement.  In addition to all other rights and remedies JRK may have at law or in equity, if Taylor's representation, affirmation, and warranty is false, Taylor will return to JRK all consideration paid pursuant to Section 1 and Section 3 of this Agreement.  Taylor further represents and affirms as a material term of this Agreement that he has been paid and/or received all leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits to which he may be entitled and that no other leave (paid or unpaid), compensation, wages, bonuses, commissions, and/or benefits are due to him, except as provided for in this Agreement.

**12.    No Assignment of Claims.**   Taylor warrants and represents that he has not previously assigned any portion of any claim that arises from or is related to the Complaint.  Taylor further represents and warrants that he knows of no other person or entity that intends to assert a claim arising out of or related to the Complaint or the Arbitration.

**13.    Disclaimer of Liability.**  Nothing in this Agreement shall constitute or be construed as an admission of liability or wrongdoing by either Party.  Each Party expressly denies that it has done anything wrong or unlawful.

**14.    Remedies for Breach.**  Should any Party prevail in any action brought against the other to enforce the terms of this Agreement, or to recover damages for breach of this Agreement, or to collect the FLSA Settlement Amount to be paid by JRK under this Agreement, the prevailing Party shall be entitled to recover from the other his or its reasonable attorneys' fees incurred in the action, along with costs.  In addition to all other rights and remedies JRK may have at law or in equity, if Taylor files a civil action or regulatory claim against JRK alleging any of the claims released herein, Taylor will return to JRK all consideration paid pursuant to Section 3 of this Agreement.  Each Party further understands and acknowledges that the Limited Confidentiality (Section 10), Nondisparagement (Section 8)  and the payment schedule of the FLSA Settlement Amount and General Release (Sections 4 and 7) provisions are material terms of the Agreement and constitutes consideration of the Agreement.  Each Party acknowledges and agrees that the non-

breaching Party would be irreparably harmed if the breaching Party breaches either of these provisions and that the amount of damages that would result from such a violation may be difficult or impossible to ascertain.  Therefore, each Party agrees that, if a Party breaches either of the above-referenced provisions of this Agreement, the breaching Party shall be obligated to pay the non-breaching Party One Thousand Dollars ($1,000.00) for each proven breach as determined by a Court as liquidated damages, and not as a penalty.  This remedy is in addition to any other remedies provided for in law or equity or provided for herein.

15. **Integration**.  This written Agreement contains the entire agreement of the Parties regarding the settlement of Taylor's claims under the FLSA and general release of claims.  This Agreement may not be changed orally but only by an agreement in writing signed by the Party against whom enforcement of any waiver, change, modification, extension, or discharge is sought.  The Parties acknowledge that each Party has not relied upon any representations or promises except as set forth herein and has not relied upon the other Party or its counsel for any advice on or interpretation of the legal or tax implications of this Agreement.  By signing below, the Parties acknowledge receipt of a copy of this Agreement. Each Party has been advised to seek the advice of a Certified Public Accountant or other tax advisor to insure and review the Agreement and to advise each Party concerning how all of the terms and conditions set forth therein may affect their future tax liabilities.  The Parties hereto hereby acknowledge and agree that each has had the opportunity to retain its, his or her own Certified Public Accountants, tax advisor or tax attorney with reference to the tax implications of this Agreement.  Further, the Parties hereby acknowledge that they have not relied upon the tax implications of this Agreement.  Further, the Parties acknowledge and agree that their signatures to this Agreement serve as the acknowledgment that they have read this particular paragraph and that they have had the opportunity to seek independent advice.  All Parties acknowledge that its, his or her attorney provided them no tax advice and they have not relied on any representations of their lawyer in providing tax advice.

16. **Severability.**  Should any clause of this Agreement be found void by a court of law, with the exception of the releases contained in Section 2 and Section 7 and the requirement that JRK pay Taylor and his counsel the FLSA Settlement Amount set forth in Section 1, that fact shall not impair the remainder of this Agreement.

17. **No Waiver.**  The failure by any of the Parties to enforce at any time, or for any period of time, any one or more of the terms or conditions of this Agreement, or a course of dealing between the Parties, shall not be a waiver of such terms or conditions or of such Party's right thereafter to enforce each and every term and condition of this Agreement.

18. **Warranty of Authority**.  Any person signing this Agreement on behalf of one of more of the parties to this Agreement warrants and represents to all other parties hereto that he or she has obtained the full consent of such entity to enter into the terms and conditions of this Agreement and has the full power to do so.

19. **Governing Law.**  This Agreement shall be interpreted and enforced in accordance with the laws of the State of Georgia.  The parties agree to and hereby do submit to jurisdiction before any federal court of record in Cobb County, Georgia.

20. **Construction of Agreement.**  The Parties hereby confirm and agree that this Agreement is the result of negotiation and compromise and that in interpreting this Agreement

neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party. Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

**21. Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

**22. Expenses.** The Parties shall bear their own expenses, including, without limitation, any attorney fees, arbitration fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the FLSA Settlement Amount to Taylor and his counsel referenced in Section 1. The Parties further agree that, except for the initial filing fee incurred by Taylor of $300, any expense related to the Arbitration will be borne by JRK and that JRK will hold Taylor harmless from any such amounts.

**23. Counterparts.** This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. portable document format) and same shall be treated as an original.

**24. Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

| Joseph Taylor | JRK Residential Group, Inc. |
|---|---|
| _/s/ Joseph Taylor_ <br> Signature | By: _____ <br> James Baumann <br> Sr. VP and General Counsel |
| Dated: 10/20/17 | |

neither party shall be considered to be the drafter of the document, and that the language should not be strictly construed against either party. Instead, the language of the Agreement should be interpreted in a manner consistent with the ordinary and reasonable meaning of the words used.

**21. Binding Effect.** This Agreement shall be binding upon and inure to the benefit of the Parties and their respective heirs, executors, administrators, officers, directors, shareholders, employees, agents, parent companies, subsidiaries, divisions, affiliates, related companies, successors, and assigns.

**22. Expenses.** The Parties shall bear their own expenses, including, without limitation, any attorney fees, arbitration fees, court costs, pleading preparation, legal and expert fees, or other expenses incurred for the negotiation, preparation, and execution of this Agreement, with the exception of the payment of the FLSA Settlement Amount to Taylor and his counsel referenced in Section 1. The Parties further agree that, except for the initial filing fee incurred by Taylor of $300, any expense related to the Arbitration will be borne by JRK and that JRK will hold Taylor harmless from any such amounts.

**23. Counterparts.** This Agreement may be executed in identical counterparts, each of which shall constitute an original of this Agreement. Signatures of the Parties may be exchanged by facsimile or electronically (e.g. portable document format) and same shall be treated as an original.

**24. Understanding and Voluntariness.** EACH PARTY REPRESENTS AND AGREES THAT THE PARTY HAS DISCUSSED ALL ASPECTS OF THIS AGREEMENT WITH THE PARTY'S COUNSEL, THE PARTY HAS CAREFULLY READ AND FULLY UNDERSTANDS ALL OF THE PROVISIONS OF THIS AGREEMENT, AND THAT THE PARTY IS VOLUNTARILY ENTERING INTO THIS AGREEMENT.

**IN WITNESS WHEREOF**, the Parties hereto have caused this Agreement to be executed by their duly authorized representatives, and have executed and delivered this Agreement, as an agreement under seal, effective as of the Effective Date.

| **Joseph Taylor** | **JRK Residential Group, Inc.** |
|---|---|
|  | By: _____ |
| Signature | James Baumann |
|  | Sr. VP and General Counsel |
| Dated: _____ | 10.24.2017 |